THE NATIONAL BLACK EXPO,   )
                        )
       Plaintiff,      )
                        )
       vs.            )    No.03 C 2751
                        )
CLEAR CHANNEL BROADCASTING, )
INC., et al.,           )
                        )
       Defendants.    )

## MEMORANDUM OPINION AND ORDER

Plaintiff National Alliance of Black Expos, Inc. ("NBE"), instituted the present action in the Circuit Court of Cook County, Illinois, on April 3, 2003 (03 L 4044), and defendant Clear Channel Communications subsequently removed it to this court invoking diversity jurisdiction under 28 U.S.C. § 1332. Plaintiff then added other defendants: non-diverse parties. Plaintiff having alleged violations of federal law, we retain jurisdiction under 28 U.S.C. § 1321. It filed its first amended complaint on May 28, 2003; its second amended complaint on October 1, 2003; and its third amended complaint on March 27, 2006. Defendants thereafter filed a motion to dismiss the third amended complaint, and, additionally, filed a motion to strike an exhibit attached to plaintiff's response to defendants' motion to dismiss. For the reasons set forth below, we grant defendants' motion to strike and their motion to dismiss.

## BACKGROUND

Since its removal, this case has developed a long and complicated history, much of which is not relevant to this motion. For our present purposes, we will discuss the background only to the extent that it relates to plaintiff's third amended complaint. The following facts are

taken from that complaint and are considered true for the purposes of this motion. Hishon v. King & Spaulding, 467 U.S. 69, 73 (1984).

In 1990, plaintiff NBE organized and debuted a large African American-centered trade exposition, the Chicago "Black Expo" ("BE"), which was modeled after an earlier exposition created by Rev. Jesse Jackson and Operation PUSH in the 1970s. The plaintiff worked with numerous vendors and sponsors, including a number of radio stations with heavy African-American listenership in Chicago. One of those radio stations was defendant WVAZ, owned by defendant Clear Channel Communications. At this time, defendant Merry Green was a consultant to the then president and CEO of NBE, Suzanne Stantly.

Following the success of BE, plaintiff and WVAZ entered into discussions as to how to increase WVAZ's role in BE. Eventually, WVAZ became a full partner and joint venturer in BE. WVAZ was responsible for numerous facets of BE, including making sales calls, contacting previously contracted vendors, providing client development assistance and providing radio air time for advertising BE locally and nationally. Plaintiff provided defendant WVAZ with contact information for numerous clients who had previously worked with NBE, and held meetings with WVAZ to discuss plaintiff's vision for the future of BE.

The 1991 BE was very successful, and generated over $700,000 in gross revenue. WVAZ was given a prominent place at BE – its logo was placed on the entryway to the exhibit, and it was given as much floor space as it desired to gain visibility in the hall.

At the same time, without plaintiff's knowledge, defendant WVAZ was working to create a competing African-American-targeted consumer trade expo. During the continued partnership with plaintiff, defendants WVAZ and Clear Channel created "An Expo for Today's Black Woman" ("ETBW"). WVAZ worked with defendants Merry Green and her

promotion company, Merry Green Promotions Group, Inc. ("MGPG"), to place an African-American face on the expo. This expo debuted in 1992 and contained the same elements as BE. Additionally, WVAZ used the confidential information and contacts gained from its partnership with plaintiff to secure sponsors and vendors for ETBW. Using its partnership with plaintiff, WVAZ claimed that ETBW was a spin-off from BE, when in fact it was in competition with BE.

WVAZ, backed by Clear Channel, used its influence in the media to entice plaintiff's sponsors and vendors to sever ties with plaintiff and begin supporting ETBW. As a result, numerous sponsors and vendors declined to renew their relationship with BE and began working with ETBW.

WVAZ began providing air time at discounted rates to ETBW – rates that were lower than the rates they were charging BE. Additionally, it only provided plaintiff air time at periods of low listenership, and air time for ETBW at times of high listenership.

In its third amended complaint, plaintiff claims defendants' actions constitute illegal restraint of trade in violation of section 1 of the Sherman Act, and conspiracy and attempt to monopolize, in violation of section 2 the Act. Plaintiff also alleges illegal price discrimination and discrimination of discounts, rebates, or advertising service charges in violation of the Robinson-Patman Antidiscrimination Act, as well as interference with prospective business advantage, intentional interference with contractual relations, breaches of contract and fiduciary duty, unjust enrichment and fraudulent concealment.

Plaintiff claims that defendants committed these violations when they acquired the confidential information while present at meetings with plaintiff, and then exploited that information to create and sustain ETBW. Plaintiff further alleges that defendants, with the

specific intent of monopolizing the expo market, illegally discriminated against plaintiff in the sale of air time on WVAZ. Additionally, plaintiff claims that while these actions occurred in 1992, defendants continue to conspire to monopolize the expo market. Finally, plaintiff alleges it did not discover the violations until a later date – a date that is not specifically alleged in the complaint – and that as a result of defendants' fraudulent concealment its claims are not barred by the statute of limitations.

Defendants subsequently filed a motion to dismiss the third amended complaint. Defendants put forth four arguments: (1) plaintiff does not have the capacity to maintain this suit because it has been involuntarily dissolved by the State of Illinois for failure to pay its franchise taxes; (2) all of plaintiff's claims are time-barred by the relevant statutes of limitations and plaintiff has not sufficiently plead fraudulent concealment in order to toll the limitation periods; (3) plaintiff has not sufficiently alleged an antitrust injury, relevant market, or made a sufficient showing of monopolization; and (4) the Robertson-Patman Act does not apply to the sale of radio advertising time.

Plaintiff's response to defendants' motion contained an exhibit not originally a part of the pleadings, and which defendants move to strike.

## ANALYSIS

### Motion to Strike

Defendants attached an exhibit to their motion to dismiss referring to plaintiff's dissolved corporate status. This exhibit was in support of defendants' contention that plaintiff could not maintain a suit because it was not current on its franchise taxes. Plaintiff's response to defendants' motion to dismiss contains an exhibit as well, which plaintiff claims is evidence of defendants' specific intent to monopolize, in violation of the Sherman Act. Defendants then

filed a motion to strike plaintiff's exhibit.

Federal Rule of Civil Procedure 12(b) states that on a motion to dismiss for failure to state a claim upon which relief can be granted, any matters outside the pleadings that are presented to and not excluded by the court require the court to convert the motion to one for summary judgment under Rule 56, and the court must then allow both parties to present all relevant evidence in its support.

Here, both parties' briefs contain exhibits which are neither part of plaintiff's complaint nor referred to within it. The defendants, but not the plaintiff, have filed a motion to strike the exhibit. Regardless, we deem both exhibits as outside the pleadings and decline to consider either of them as part of the motion to dismiss. Berthold Types Ltd. v. Adobe Sys. Inc., 242 F.3d 772, 775 (7th Cir. 2001).

## Motion to Dismiss

On a motion to dismiss, the well-pleaded allegations of the complaint must be accepted as true. Hishon v. King & Spaulding, 467 U.S. 69, 73 (1984); McMillan v. Collection Prof'ls, Inc., 455 F.3d 754, 758 (7th Cir. 2006). We must draw all reasonable inferences in favor of plaintiff. McMillan, 455 F.3d at 758. Dismissal is only proper when it appears beyond doubt that plaintiff can prove no set of facts in support of plaintiff's claim that would entitle plaintiff to relief. Conley v. Gibson, 355 U.S. 41, 45-46 (1957); McCready v. eBay, Inc., 453 F.3d 882, 888 (7th Cir. 2006).

## Plaintiff's Capacity to Sue

Defendants first claim that plaintiff does not have the capacity to maintain this suit against defendants because NBE has been involuntarily dissolved by the State of Illinois for failure to pay its franchise taxes. In support of this allegation, defendants attach an exhibit

to their motion to dismiss, which is a matter outside the pleadings, and which, if we were to consider it, would convert this motion to dismiss into one for summary judgment. We need not consider this exhibit, however, because plaintiff has conceded the fact of its involuntary dissolution in its response to the motion to dismiss. Plaintiff contends, however, that the proper action in this instance under Illinois law is not to dismiss the complaint, but merely to stay the proceedings until plaintiff pays its taxes.

Federal Rules of Civil Procedure 17(b) provides that "[t]he capacity of a corporation to sue or be sued shall be determined by the law under which it was organized." Fed. R. Civ. P 17(b). Illinois law requires all domestic corporations to pay various taxes, including franchise taxes, for the privilege of operating in the state. 805 ILCS 5/15.35 (2001). The relevant statute provides: "No corporation required to pay a franchise tax, license fee or penalty under this Act shall maintain any civil action until all such franchise taxes, license fees, and penalties have been paid in full." 805 ILCS 5/15.85 (2001). Illinois courts have held, however, § 15.85 does not require dismissal of a suit for failure of the corporation to pay taxes. Lease Partners Corp. v. R&J Pharmacies, Inc., 329 Ill. App. 3d 69, 73, 768 N.E.2d 54, 56 (Ill. App. Ct. 2002). Instead, "if a corporation, which is delinquent in the payment of franchise taxes, has started a suit, it may, by subsequent compliance with the statute, continue prosecution of that suit." Merchants Environmental Industries, Inc. v. Montgomery Ward & Co., Inc., 252 Ill. App. 3d 906, 911, 625 N.E.2d 689, 692 (Ill. App. Ct. 1993)(quoting Jorgensen v. Baker, 21 Ill. App. 2d 196, 203, 157 N.E. 2d 773, 777 (Ill. App. Ct. 1959).

On the facts before us, then, it would seem that we should stay these proceedings. However, upon this court's investigation, we found that plaintiff had been reinstated as a corporation in good standing by the State of Illinois on September 29, 2006, which must

mean that it brought its franchise taxes up to date. Therefore, we find that plaintiff has the capacity to maintain this suit.

Statutes of Limitations

Defendants assert that all of plaintiff's claims are time-barred. Plaintiff counters that the various statutes of limitations have been tolled by plaintiff's failure to discover the injury during the relevant time frame, and/or by defendants' alleged fraudulent concealment. We first deal with the federal antitrust claims, followed by the state claims.

Federal Law Claims

A complaint is not required to allege all or any of the facts entailed in the claim, nor is it required to anticipate or attempt to defuse potential defenses. Kolupa v. Roselle Park Dist., 438 F.3d 712, 714 (7th Cir. 2006); Doe v. Smith, 429 F.3d 706, 709 (7th Cir. 2005). However, a plaintiff may plead herself out of court by pleading facts which show that her claim is barred by the statute of limitations. United States v. Lewis, 411 F.3d 838, 842 (7th Cir. 2005).

Claims for violations of the Sherman Act and the Roberston-Patman Act must be brought within four years of the alleged antitrust injury. 15 U.S.C. §15b. Generally, the statute of limitations begins to run at the time the alleged injury occurs. In re Copper Antitrust Litigation, 436 F.3d 782, 789 (7th Cir. 2006). In the instant case, this would be sometime in 1992, and therefore the statute of limitations would have run in 1996, seven years prior to the commencement of this litigation.

However, there are three ways that the statute of limitations can be tolled: the discovery rule, equitable tolling, and equitable estoppel.[1] These three common law doctrines are read

---

[1]Plaintiff also argues that its claims are not barred by the statute of limitations because of the continuing violation doctrine. "Antitrust law provides that, in the case of a continuing violation, say a price fixing conspiracy that brings about a series of unlawfully high priced sales over a period of years, each overt

into every federal statute of limitations in the absence of a contrary directive from Congress. Cada v. Baxter Healthcare Corp., 920 F.2d 446, 450-51 (7th Cir. 1991).

Application of the discovery rule alters the moment that the claim actually accrues, thereby altering when the statute of limitations begins to run. In re Copper Antitrust Litig., 436 F.3d at 789. The discovery rule is "based on the general rule that accrual occurs when the plaintiff discovers that he has been injured and who caused the injury," and it is at that point that the statute of limitations begins to run. Id.

The second doctrine, equitable tolling, is slightly different. It allows the plaintiff to avoid the bar of the statute of limitations if despite all due diligence she is unable to obtain vital information bearing on the existence of her claim. Cada, 920 F.2d at 451. This differs from the discovery rule in that the plaintiff is assumed to know that she has been injured, but she cannot obtain information necessary to decide whether the injury is due to wrongdoing and caused by or due to the defendant. Id. This determination is made on an objective basis using a reasonable person in the plaintiff's position exercising due diligence. Id.; Shropshear v. Corp. Counsel of the City of Chicago, 275 F.3d 593, 595 (7th Cir. 2001). Furthermore, the plaintiff can only suspend the statute of limitations under this doctrine for such time as is reasonably necessary to conduct the necessary inquiry into a possible (but not certain) claim. Cada, 920 F.2d at 451. The notion of possibility is key because a need for certainty would require the statute of limitations to be tolled infinitely. Id.

---

act that is part of the violation and that injures the plaintiff, e.g., each sale to the plaintiff, starts the statutory period running again, regardless of the plaintiff's knowledge of the alleged illegality at much earlier times." Klehr v. A.O. Smith Corp., 521 U.S. 179, 189 (U.S. 1997). Plaintiff claims that it is suffering a continuing violation because defendants "continue to conspire" and continue "to claim ownership" of ETBW, and that the defendants "continue to profit" from ETBW. (plf. response to def. motion at 6). However, because we find, as discussed below, that none of these alleged actions constitutes an antitrust violation, we find that the continuing violation doctrine does not apply to these facts.

The third doctrine, equitable estoppel, also called fraudulent concealment, "presupposes that the plaintiff has discovered or, as required by the discovery rule should have discovered," that the defendant injured her. Shropshear, 275 F.3d at 595. Fraudulent concealment "denotes efforts by the defendant, above and beyond the wrongdoing upon which the plaintiff's claim is founded, to prevent, by fraud or deception, the plaintiff from suing in time." Id. Any deliberate or otherwise blameworthy conduct by the defendant which causes the plaintiff to miss the statutory deadline to file her claim may be the basis for asserting the equitable estoppel defense. Id. at 597. However, just as with equitable tolling, here plaintiff must show "that he neither knew nor, in the exercise of due diligence, could reasonably have known of the offense." In re Copper Antitrust Litig., 436 F.3d at 791.

Although not in so many words, plaintiff argues that its claims should survive the statute of limitations under either the discovery rule or equitable tolling because plaintiff has not alleged a date when the injury was discovered. Defendants argue that by not pleading a date of discovery, plaintiff has artfully plead its complaint to avoid the statute of limitations, and while it need not anticipate affirmative defenses, it must sufficiently plead averments of time and place, which it has not done. Defendants further argue that, even drawing all inferences in favor of plaintiff, it is impossible to conclude that plaintiff discovered the alleged wrongdoing as late as 1999, allowing plaintiff to file its complaint in 2003.

We believe that plaintiff cannot utilize the discovery rule to alter the date its injury accrued. Under the discovery rule, the statute of limitations begins when the plaintiff knows that it was injured and who injured it. In re Copper Antitrust Litig., 436 F.3d at 789. By plaintiff's own complaint, it knew that it was injured in 1992, when ETBW debuted, marketing itself in exactly the same way as BE. Further, by its complaint, plaintiff knew who

injured it at that very same time, because that is when WVAZ cancelled its relationship with plaintiff and Merry Green moved from being the assistant to the director of NBE to being the face of ETBW. Therefore, at the latest, plaintiff's injury accrued in 1992, which started the running of the statute of limitations.

Plaintiff does, however, find relief in the equitable tolling doctrine. To qualify for equitable tolling, plaintiff must demonstrate that it exercised due diligence in discovering the necessary information to file a claim, and in promptly filing the claim thereafter. Ashafa v. City of Chicago, 146 F.3d 459, 464 (7th Cir. 1998). We take as true, as we must in a motion to dismiss, plaintiff's allegation in its complaint that it exercised due diligence in all aspects of its dealings with the defendants, including the discovery of the operative facts which led to the filing of the complaint. Furthermore, plaintiff has not alleged when it discovered the injury, nor need it have. "[A] federal complaint does not fail to state a claim simply because it omits facts that would defeat a statute of limitations defense." Hollander v. Brown, 457 F.3d 688, 692 n.1 (7th Cir. 2006). Through this accident of pleading, we therefore cannot infer from this omission a lack of due diligence on the part of plaintiff to bring this claim within a reasonable time. *See* Clark v. City of Braidwood, 318 F.3d 764 (7th Cir. 2003) (plaintiff's failure to plead date of discovery of injury not fatal to complaint because the possibility existed that a potential set of facts, if proven, would establish defense to the statute of limitations). Therefore, at this time plaintiff has sufficiently plead an equitable tolling defense to the federal antitrust statute of limitations.[2]

The reasons that allow plaintiff to survive the statute of limitations by way of equitable

---

[2]We note that though plaintiff has survived the statue of limitations at the pleading stage, its likelihood of survival past this point is remote.

tolling, by contrast, force plaintiff's claim of fraudulent concealment (equitable estoppel) to fail. Unlike the other doctrines, fraudulent concealment must be pled with particularity in compliance with Fed. R. Civ. P. R. 9(b). Spann v. Comm. Bk. of N. Virginia, 2004 WL 691785, *8 (N.D. Ill. 2004); Triple Canopy, Inc. v. Moore, 2005 WL 1629768, *12 (N.D. Ill. 2005). "A complaint should distinctly state what the discovered fraud actually was and when the plaintiff discovered it, so that the Court may evaluate whether he could have discovered it through the exercise of due diligence." Greer v. Bank One, 2002 WL 1732366, *3 (N.D. Ill. 2002). Plaintiff here has merely alleged the bare conclusion that "defendants wrongfully concealed their actions against the Plaintiff." Plaintiff has not alleged any detail regarding the alleged fraudulent concealment, such as which defendants took part in the concealing, how they concealed their actions, when the concealing took place, or when plaintiff discovered defendants' alleged fraud. Because plaintiff fails to allege fraudulent concealment with the required particularity, the statutes of limitations cannot be tolled on that basis.[3]

## State Law Claims

Plaintiff's other claims arise out of contract and tort and are thereby governed by Illinois statutes of limitations and Illinois tolling provisions. Reed v. Mokena Sch. Dist. No. 159, 41 F.3d 1153, 1155 (7th Cir. 1994). Illinois courts acknowledge the existence of the tolling

---

[3] Plaintiff claims that its failure to plead fraudulent concealment with particularity should not prove fatal to its claim. Plaintiff relies on Fine v. Jansen, 1986 WL 8731 (N.D. Ill. 1986), for this proposition. In Fine, the court held that a plaintiff alleging corporate fraud could survive a motion to dismiss, where the plaintiff made a number of the fraud allegations upon information and belief. The court reasoned that in situations such as this, where most of the information necessary will be in the hands of the defendants, the plaintiff cannot be required to know all the details of the alleged fraudulent scheme. The court found that the plaintiff had alleged sufficient facts within its knowledge to support the fraud claim, and therefore, the pleading of the specifics of the scheme upon information and belief was sufficient to state a claim upon which relief could be granted. That case is inapposite here. Plaintiff here has not alleged any of the facts deemed to be within its knowledge, nor has it alleged any of the specifics of the fraudulent concealment scheme, upon information and belief, or otherwise. Therefore, plaintiff's claim must fail.

doctrines discussed above, but define them in a slightly different manner, and thus those provisions apply differently to the case before us.

The Illinois Supreme Court has held that the discovery rule "postpone[s] the commencement of the relevant statute of limitations until the injured plaintiff knows or reasonably should know that he has been injured and that his injury was wrongfully caused." Hollander, 457 F.3d at 692 (citing Golla v. Gen. Motors Corp., 167 Ill.2d 353, 657 N.E.2d 894, 898 (Ill. 1995)). This differs from the federal discovery rule in that in the Illinois rule the injury does not accrue until the plaintiff knows that the injury was wrongly caused, not just that she was injured and who injured her. However, the term "wrongfully caused" does not denote knowledge of negligent conduct or knowledge of the existence of a cause of action. Knox College v. Celotex Corp., 88 Ill. 2d 407, 430 N.E.2d 976, 980-81 (Ill. 1981). A plaintiff is deemed to know that his injury is wrongfully caused when she possesses "sufficient information concerning [the] injury and its cause to put a reasonable person on inquiry to determine whether actionable conduct is involved." Id. Thus, this standard appears very similar to the federal standard for equitable tolling.

Equitable tolling in Illinois, however, is more akin to equitable estoppel and has been defined as "a rule that, like equitable estoppel, works to suspend the limitations period when 'the defendant has actively misled the plaintiff, or if the plaintiff has been prevented from asserting his or her rights in some extraordinary way.'" Hollander, 457 F.3d at 694 n.3 (citing Clay v. Kehl, 189 Ill. 2d 603, 727 N.E.2d 217 (Ill. 2000)). Similarly, equitable estoppel tolls the statute of limitations "during any period in which the defendant took certain active steps to prevent the plaintiff from suing." Examples of this include "where the defendant has 'lulled' the plaintiff into delaying suit, either by promising not to plead a limitations defense or by

concealing evidence that the plaintiff needed to determine the existence of her claim." *Id.* Plaintiff must both plead and prove affirmative acts by the defendant designed to prevent discovery of the action. Clay, 727 NE 2d at 223.

Additionally, Illinois has codified fraudulent concealment under 735 5/13-215. The statute states that "[i]f a person liable to an action fraudulently conceals the cause of such action from the knowledge of the person entitled thereto, the action may be commenced at any time within five years after the person entitled to bring the same discovers that he or she has such cause of action, and not afterwards." To plead fraudulent concealment, a party must allege "(1) there was concealment of a material fact; (2) the concealment was intended to induce a false belief, under circumstances creating a duty to speak; (3) the innocent party could not have discovered the truth through a reasonable inquiry or inspection and relied upon the silence as a representation that the fact did not exist; (4) the concealed information was such that the injured party would have acted differently had she been aware of it; and (5) reliance by the person from whom the defendant concealed the fact led to her injury." Jones v. Hoosman, 2006 WL 1302524 (N.D. Ill. 2006).

Under Illinois law, then, it appears that the discovery rule, rather than equitable tolling, allows the plaintiff here to avoid the statutes of limitations for the various tort and contract claims alleged. Because plaintiff has not alleged the date when it discovered the injury, we cannot infer that plaintiff reasonably should have known of it earlier, and therefore, at this stage, the discovery rule applies, which defers the date of accrual to the point of discovery. Equitable tolling, equitable estoppel and the fraudulent concealment statute would not apply because plaintiff has not alleged sufficient facts, nor plead those theories with the required specificity. Schacht v. Baccala & Shoop Ins. Services, 1993 WL 469909, *7 (N.D. Ill. 1993);

Feng v. Sandrick, 636 F.Supp. 77, 84 n.8 (N.D. Ill.1986); Curry v. A.H. Robins Co., 775 F.2d

212, 218 (7th Cir. 1985); Bush v. Continental Casualty Co., 116 Ill. App. 2d 94, 253 N.E.2d 619,

622 (Ill. App. Ct. 1969). Therefore, plaintiff's claims survive the defense of the statute of

limitations, but plaintiff's fraudulent concealment claim (count XI) is dismissed.[4]

Sufficiency of Antitrust Claims

Finding that at this stage plaintiff's claims are not barred by the statute of limitations,

we turn to whether plaintiff has sufficiently plead a claim for violations of the Sherman Act

and the Robertson-Patman Act. We remain mindful that while a plaintiff need not plead facts

or legal theories, (Nance v. Vieregge, 147 F.3d 589, 590 (7th Cir. 1998)), and specifying an

incorrect theory is not fatal, (Bartholet v. Resihauer, 953 F.2d 1073, 1078 (7th Cir. 1992)), we

need not strain to find inferences favorable to the plaintiff which are not apparent on the face

of the complaint, (Coates v. Illinois State Bd. of Ed., 559 F.2d 445, 447 (7th Cir. 1977)), nor need

we accept plaintiff's legal conclusions as true. R.J.R. Services, Inc. v. Aetna Casualty & Surety

Co., 895 F.2d 279, 281 (7th Cir. 1989). If the facts "do not at least outline or adumbrate" a

violation of the Sherman Act, the plaintiff "will get nowhere merely by dressing them up in

the language of antitrust." Sutliff, Inc. v. Donovan Cos., 727 F.2d 648, 654 (7th Cir. 1984).

Sherman Act Violations

Defendants take issue with plaintiff's allegations and argue that plaintiff has not

adequately plead a claim under sections 1 and 2 of the Sherman Act. We discuss each of these

sections in turn.

We begin with section 2. It states that "every person who shall monopolize, or attempt

---

[4]Again we note, as above, that plaintiff's chances of survival beyond the pleading stage are remote, based on these allegations.

to monopolize, or combine or conspire with any other person or persons to monopolize any part of the trade or commerce among the several States, or with foreign nations, shall be deemed guilty of a felony...," 15 U.S.C. § 2. Plaintiff here has alleged defendants conspired and attempted to monopolize the African-American trade and consumer expo market. To allege an attempt to monopolize, plaintiff must show (1) that the defendant has engaged in predatory or anti-competitive conduct with (2) a specific intent to monopolize and (3) a dangerous probability of obtaining monopoly power. Spectrum Sports, Inc. V. McQuillan, 506 U.S. 447, 456 (1993). The elements for conspiracy to monopolize are similar: (1) the existence of a combination or conspiracy, (2) overt acts in furtherance of the conspiracy, (3) an effect upon a substantial amount of interstate commerce, and (4) the existence of specific intent to monopolize. Goodloe v. Nat. Wholesale Co., Inc., 2004 WL 1631728, *6 (N.D. Ill. 2004). Both claims require plaintiff to define the relevant market that defendant is attempting, or conspiring, to monopolize. Goodloe, 2004 WL 1631728 at *6. The relevant market is defined as "the market area in which the seller operates, and to which the purchasers can practicably turn for supplies." Tampa Elec. Co. v. Nashville Co., 365 U.S. 320, 327 (1961). Then the "complaint must allege facts sufficient to create an inference that the defendant has the market power to create a monopoly." Goodloe, 2004 WL 1631728, at *5.

Defendants argue that plaintiff's delineation of the relevant market to this action is not sufficiently plead. The relevant market contains both product and geographical components. Nobody in Particular Presents, Inc. v. Clear Channel Communications, 311 F. Supp. 2d 1048, 1075 (D.Co. 2004). Plaintiff's complaint alleges that the relevant product market is "those consumer trade shows and exhibitions that target 'urban' African-American audiences, communities or businesses." This is a sufficient allegation of a relevant product market. See

Seabury Mgmt., Inc. V. PGA, 878 F. Supp. 771, 779-80 (D. Md. 1994) (golf trade shows constituted a relevant market – their appeal to buyers and the products and services offered differ from those of other marketing and distribution methods) *aff'd in part, rev'd & remanded in part on other grounds* 52 F.3d 322 (4th Cir.)).

Plaintiff has also sufficiently alleged a relevant geographical market "in several states and metropolitan areas that boast high or significant concentrations of 'urban' or African-American listeners, including but not limited to Chicago, Illinois and portions of Indiana, Michigan, Wisconsin, Houston, Texas; Norfolk, Virginia; Memphis, Tennessee; and Raleigh, North Carolina, St. Louis and Pittsburgh." While this description is broad as compared with plaintiff's factual allegations in the complaint, whether the market described is the relevant one or not is a determination of fact not proper for disposal on a motion to dismiss. AG Fur Industrielle Elektronik Agie v. Sodick Company Ltd., 748 F. Supp. 1305, 1316 (N.D. Ill. 1990) (conclusory allegations of relevant market are sufficient to withstand a motion to dismiss). Therefore, we find plaintiff has sufficiently plead the relevant market.

Both allegations also require a specific intent to monopolize. The Great Escape, Inc. v. Union City Body Co., Inc., 791 F.2d 532, 541 (7th Cir. 1986). We take as true plaintiff's allegation that defendants' conduct was specifically intended to monopolize.

Additionally, both claims require a showing that "the alleged monopolist possess[es] enough power or potential power in this relevant market in order to harm competition." Spanish Broadcasting System of Florida, Inc. v. Cleark Channel Communications, Inc., 376 F.3d 1065 (11th Cir. 2004). Plaintiff must show both defendants' market power, and that there is a dangerous probability of monopolization of the relevant market. Goodloe, 2004 WL 1631728, at *6. Plaintiff has failed to allege that defendants possess market power in the

relevant market, or that there is a dangerous probability of defendants acquiring monopoly power. Plaintiff has made no allegation in its complaint regarding these elements. It claims, in its response to defendant's motion to dismiss, that it sufficiently alleged these elements when it pointed out that Clear Channel owned 1200 radio stations in 300 markets.[5] Even drawing the inference in favor of the plaintiff, creating an allegation out of this statement suffers from two flaws. First, the market that plaintiff claims defendant is dominant in, the national market, is not the relevant market that plaintiff itself delineated. Plaintiff has made no allegations as to Clear Channel's radio dominance in the relevant market.[6] However, even if it had made such allegations, Clear Channels' radio dominance is irrelevant. Plaintiff is not alleging that the injury stems from market power of radio stations, but from an attempt to monopolize the African-American trade exposition industry. Plaintiff has made no allegation that defendants have market power over this industry in the relevant market. Plaintiff has alleged nothing which allows us to infer that Clear Channel owns any other expos in other parts of the relevant market, or that other expos have been driven out by defendants' actions. Plaintiff's only fact regarding such market power deals solely with the metropolitan Chicago area, where, since plaintiff's expo ceased doing business, ETBW is the only expo left standing. Therefore, plaintiff has failed to allege market power, or a dangerous probability of obtaining monopoly power.

Although we find from the above analysis that plaintiff has not sufficiently plead either

---

[5]Plaintiff extracts this statement from a portion of the complaint introducing the parties generally, and does not reference this act anywhere in its claims.

[6]In para. 21 of plaintiff's third amended complaint it notes that five radio stations were involved in the planning of the black expo, two of which allegedly belonged to defendants. Plaintiff does not allege that these five stations are the only ones in the Chicago metropolitan area with heavy African-American listenership, nor allege misconduct by defendants' other radio station not a party to this action.

conspiracy or attempt to monopolize, we turn to the remaining factor of attempt to monopolize, specifically, anti-competitive conduct. Plaintiff has also failed to allege that defendants engaged in predatory or anti-competitive conduct. "Predatory conduct may be broadly defined as conduct that is in itself an independent violation of the antitrust laws or that has no legitimate business justification other than to destroy or damage competition." The Great Escape, Inc., 791 F.2d at 541. Plaintiff makes conclusory statements of law that the conduct alleged is anti-competitive, but we need not accept plaintiff's conclusions of law as true.

Plaintiff first claims that defendants Clear Channel and WVAZ misappropriated confidential information acquired at meetings with plaintiff, and then conspired with defendants Merry Green and MGPG to create ETBW. It is clear that regardless of the spin plaintiff attempts to place on this conduct, defendants working together to create a competing expo to BE is not anti-competitive conduct. Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc., 429 U.S. 477, 488 (1977). It is in fact pro-competitive conduct in that it is creating competition between expos not previously present. Id.

Secondly, plaintiff alleges defendants conspired to and did sell advertising space to ETBW at a discount, and at better listening hours than awarded BE. As a preliminary note, it is not clear from the pleadings who actually owns ETBW.[7] Regardless, the outcome is the same. If Merry Green does not have any ownership in ETBW, and the expo is simply a client of hers, then the money paid for advertising goes from ETBW to Clear Channel, which is also the owner of the radio station. This is merely a case of a company using its own resources to

_____

[7]At one point plaintiff's complaint alleges that defendant Merry Green and MGPG "continue to count WVAZ and [ETBW] as clients," but three paragraphs later states that "Merry Green continues to conspire with WVAZ and the Clear Channel Defendants to claim ownership of [ETBW]."

promote a new product. Even if Merry Green claims some ownership in ETBW, she is at most a joint venturer with Clear Channel, and the use of one joint venturer's resources (in this case, a radio station) to promote the joint venture, is not illegal conduct, but merely part of the definition of a joint venture. *See* <u>Scandinavian Airlines Sys. Denmark-Norway-Sweden v. McDonald's Corp.</u>, 947 F. Supp. 1257, 1259 (N.D. Ill. 1996)(one factor determining existence of joint venture is a joint interest, as shown by contribution of property, natural resources, effort, skill, or knowledge).[8]

An analogy can be drawn here. A clothier operates a store offering a number of brands of clothes. The clothier decides to design clothes of her own, and, once produced, places her clothes in the front of the store. This requires her to move other competing clothes to the back of the store. Can she do this? We believe so. She owns the store. Can she display her line of clothing in her store, without paying a fee, while other designers have to pay? Again, we believe so because the money paid by her as the designer would simply remain with the same entity. We think this would be true even if she was designing the clothes in a joint venture with another.

Plaintiff alleges that through Clear Channel's media leverage in the radio market, it coerced NBE's sponsors to abandon NBE and begin sponsoring ETBW. Plaintiff makes no specific allegation regarding how Clear Channel effected this coercion, nor how this coercion affected competition in the relevant market. Plaintiff's allegations relate solely to its own injury. Even if Clear Channel's conduct in this arena would be deemed unfair, "an act of pure

---

[8]We have found no cases that hold that using one party's resources to promote a joint venture constitutes anti-competitive conduct or an antitrust violation. However, even if such conduct was considered anti-competitive, at most it would be evaluated under the rule-of-reason standard. *See* <u>Car Carriers</u>, 745 F.2d at 1108. This standard contains a threshold requirement where plaintiff must first show defendants' market power. <u>Valley Liquors, Inc. v. Renfield Importers, Ltd.</u>, 822 F.2d 656, 666 (7th Cir. 1987). If plaintiff fails to do so, as plaintiff here has, then the inquiry is ended. *Id.*

malice by one business competitor against another does not, without more, state a claim under the federal antitrust laws." Brooke Group Ltd. v. Brown & Williamson Tobacco Corp., 509 U.S. 208, 225 (1993). Therefore, we dismiss counts II and III of plaintiff's complaint.

Plaintiff's section 1 allegations fare no better. Section 1 of the Sherman Act proscribes "every contract, combination, in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations." 15 U.S.C. § 1.

In order to state a claim under this Act, plaintiff must first show that defendants had market power. The Great Escape, Inc. v. Union City Body Co., Inc., 791 F.2d 532, 537 (7th Cir. 1986). While there are some section 1 violations that do not require a showing of market power, such as horizontal price-fixing between actors in the same market, we do not believe this is one of those *per se* violations. As stated above, plaintiff has failed to allege defendants have market power in the relevant market. Plaintiff's factual claims center solely around the Chicago metropolitan area, and its sole claim regarding defendants' market power is on a nationwide scale and refers to defendants' control of radio stations, not of expos.

The other fundamental requirement for showing a section 1 violation is a "sufficient allegation of anti-competitive effects that would result or have resulted from the defendants' actions; the absence of such allegations is ordinarily fatal to the existence of a cause of action." Car Carriers, Inc. v. Ford Motor Co., 745 F.2d 1101, 1107 (7th Cir. 1984). These anti-competitive effects must necessarily come from anti-competitive conduct, which plaintiff has failed to allege, as demonstrated above. Even if plaintiff had shown actionable anti-competitive conduct, it could not make a claim under this Act. The purpose of the Sherman Act is to rectify injuries to consumers caused by diminished competition. *Id.* Therefore, it follows that plaintiff must allege an injury, not only to itself, but to the market as well. *Id.*

Plaintiff has failed to do this. All of plaintiff's factual allegations merely show injury that defendants committed on plaintiff's expo. Plaintiff has made no allegations as to how this alleged anti-competitive conduct has affected the market as a whole. Plaintiff makes vague statements about the injury to the African-American community when the money from these expos is filtered out to a conglomerate such as Clear Channel, rather than staying in the community. This may be true. However, it is not the type of injury that Congress sought to remedy with the antitrust laws. Car Carriers, Inc., 745 F.2d at 1107 ("purpose of the Sherman Act is to rectify the injury to consumers caused by diminished competition"). There are no allegations that defendants' dominance in the expo market has had any effect on the prices consumers pay for admittance to the expo, or for goods purchased therein. The inferences we draw in favor of plaintiff can only be drawn so far. We are unable to bridge the giant chasm left by plaintiff's pleadings. Therefore, plaintiff's section 1 claim must fail and we dismiss count I of the complaint.[9]

By our holding here we do not say that defendants' conduct was honorable, nor do we say that plaintiff has no avenues of relief from other areas of law, such as tort and contract. We merely hold, consistent with the cases in our circuit and the Supreme Court, and consistent with Congress' intent that tortious conduct (here in the form of unfair competition) that does not otherwise contravene the antitrust laws, is not actionable under the Sherman Act.

Robertson-Patman Act Violations

---

[9]Plaintiff claims, in its response to defendants' motion to dismiss, that it has sufficiently alleged an antitrust violation, and that it has consistently alleged that Clear Channel and its radio stations fixed prices and interfered with sponsorships in order to make non-Clear Channel expos unappealing to vendors, sponsors and consumers. We first note that a complaint may not be amended by the brief in opposition of the motion to dismiss. Car Carriers, 745 F.2d at 1107. However, even if we were to look at these statements as being consistent with the well-pleaded allegations in the complaint, none of plaintiff's allegations is evidence of price-fixing. At most, plaintiff has alleged price discrimination, an allegation that falls under the Robertson-Patman Act, which we discuss below.

Plaintiff also asserts violations of the Robertson-Patman Act, specifically illegal price discrimination under 15 U.S.C. §13, and discrimination in rebates, discounts, or advertising service charges under 15 U.S.C. § 13A. These claims fail as a matter of law.

The Robinson-Patman Act's prohibition on price discrimination extends only to transactions involving commodities. Baum v. Investors Diversified Services, Inc., 409 F.2d 872, 873 (7th Cir. 1969). Courts have strictly construed this term, holding that it denotes only "tangible products of trade," and advertising has been explicitly excluded from this definition. See Columbia Broadcasting Systems, Inc. v. Amana Refrigeration, Inc., 295 F.2d 375 (7th Cir. 1961); Ambook Enterprises v. Time, Inc., 612 F.2d 604 (2nd Cir. 1979); Advo Inc. v. Philadelphia Newspapers, Inc., 51 F.3d 1191, 1195 n.3 (3rd Cir. 1995); National Tire Wholesale, Inc. v. Washington Post Co., 441 F. Supp. 81, 85-86 (D. D. C. 1977). Therefore, plaintiff's allegations of discrimination in the sale of radio advertising time do not fall under the Act, and counts IV and V are dismissed.

## Supplemental Jurisdiction

Plaintiff's remaining claims are pendent state law claims. 28 U.S.C. § 1367 grants this court jurisdiction to hear these pendent state claims. We may decline to exercise this jurisdiction for several reasons, including instances such as this, where we have dismissed all claims over which we exercise original jurisdiction. §1367(c)(4). In Payne for Hicks v. Churchich, the Seventh Circuit stated that when the district court dismisses all federal claims before trial, "the usual and preferred course is to remand the state claims to the state court unless there are countervailing considerations." 161 F.3d 1030, 1043 (7th Cir. 1998). These exceptions include the running of the state law cause of action's statute of limitations, and instances where sending the case to another court will cause a substantial duplication of effort.

Williams v. Seniff, 342 F.3d 774, 793 (7th Cir. 2003). Because plaintiff has not plead a date of discovery of its injury, we cannot say that the state claims' statutes of limitations have expired. Additionally, just as in Williams, discovery has been completed and transfer to state court would not permit plaintiff to uncover additional facts to support its claims. *Id.* Consequently, we dismiss the pendent state law claims.

## CONCLUSION

For the foregoing reasons, we grant defendants' motion to strike plaintiff's exhibit, and grant defendants' motion to dismiss plaintiff's complaint.

James B. Moran
_____
**JAMES B. MORAN**
Senior Judge, U. S. District Court

Feb. 8   , 2007.